Case 4:16-cv-00894   Document 98   Filed in TXSD on 03/14/17   Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
March 14, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ORGANIC ENERGY CORPORATION, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:16-CV-894 |
| | § | |
| LARRY BUCKLE, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

**I. INTRODUCTION**

Pending before the Court are the defendants', Gregory Harris ("Harris"), Kurt Gardner ("Gardner"), Conly Hansen ("Conly"), Carl Hansen ("Carl"), and William "Brian" Crawford ("Crawford") (collectively, the "defendants"), motions to dismiss for lack of personal jurisdiction pursuant to 12(b)(2) of the Federal Rules of Civil Procedure (Dkt. Nos. 13 and 54).[1] The plaintiffs Organic Energy Corporation ("OEC") and George Gitschel ("Gitschel") (collectively, the "plaintiffs"), have filed responses in opposition (Dkt. Nos. 21 and 67); to which the defendants have filed replies in support of their motions (Dkt. Nos. 23 and 71). Additionally, upon leave of the Court, the plaintiffs filed a surreply (Dkt. No. 75). After having carefully considered the motions, responses, replies, the record and the applicable law, the Court determines that the defendants' motions to dismiss should be **GRANTED**, as more fully explained below.

**II. FACTUAL BACKGROUND**

In November of 2009, co-plaintiff, OEC was incorporated in Delaware while its principal place of business was in California. OEC was founded by Gitschel, Harris, Gardner, Conly

---

[1] Crawford has filed a separate motion to dismiss; however, the Court will address both motions as the defendants are similarly situated.

Hansen and Carl Hansen. As a company, OEC focuses on converting solid waste into reusable products, raw material or energy. OEC's "goal is to build plants that will efficiently process municipal solid waste and leave 'zero waste.'" (Dkt. No. 21, at 6). The co-plaintiff, Gitschel, is president of OEC as well as creator of many of its technologies. Gitschel's primary residence is in Houston, Texas. Harris and Gardner are residents of California, Conly and Carl Hansen are residents of Utah, and Crawford is a resident of Louisiana. Crawford—who is a minority shareholder in OEC—also owns shares in HNL, LLC.[2] The defendants, not including Crawford, and Gitschel were the cofounders and primary shareholders of OEC.

On June 18, 2012, the parties entered into a stock purchase agreement ("SPA") (Dkt. 21, Ex. 1). As a result, Gitschel was allocated 68% of OEC stock while Gardner, Harris, and the Hansens would each retain 2.5% a piece. After the execution of the SPA and the resignation of the defendants as officers of OEC, Gitschel relocated OEC headquarters from California to Houston, Texas. The plaintiffs allege that sometime after OEC moved to Texas the defendants began to conspire to usurp control of OEC. They allege further that as a result of this conspiracy Darrin Stanton ("Stanton"), who is a Texas resident, and HNL, LLC filed a lawsuit in Delaware in hopes of taking control of OEC. In contrast, the defendants allege that the purpose of the Delaware lawsuit was simply to redistribute shares of OEC. The defendants further contend that they had no further contact with OEC operations after its relocation.

In 2014, the original plaintiff, OEC, brought this instant action in state court against multiple defendants. The parties to the original suit settled and all claims were dismissed. In February 2016, the plaintiffs filed an amended petition in state court adding Gitschel as a plaintiff, naming new defendants and including a variety of new claims. The defendants

---

[2] The plaintiffs contend that HNL, LLC, which was organized under the laws of Louisiana, is solely owned and controlled by Crawford and is used as his alter ego.

subsequently removed the case to this Court, based on federal question jurisdiction. Once in this Court the plaintiffs filed a third amended complaint, which added Crawford as a co-defendant. Generally, the plaintiffs assert several allegations, claiming that the defendants committed fraud, breached certain fiduciary duties and tortuously interfered with various existing and prospective contractual relationships.

### III. STANDARD OF REVIEW

Rule 12(b)(2) of the Federal Rules of Civil Procedure authorizes a motion to dismiss based on the defense that a court lacks jurisdiction over the defendant. *See* FED R. CIV. P. 12(b)(2). On such a motion, the plaintiff bears the burden of establishing personal jurisdiction over a non-resident defendant. *See Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014) (citing *Luv N' Care, Ltd. v. Insta–Mix, Inc.,* 438 F.3d 465, 469 (5th Cir. 2006)). Where a court rules on such a motion without a hearing, however, the court must accept, as true, all uncontroverted allegations in the plaintiff's complaint and resolve all factual conflicts presented by the parties' affidavits in the plaintiff's favor. *Id*. (citing *Revell v. Lidov,* 317 F.3d 467, 469 (5th Cir. 2002)). Thus, absent a hearing, the plaintiff need only establish a prima facie case for personal jurisdiction. *See Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). Nevertheless, after the plaintiff establishes its prima facie case, the burden then shifts to the non-resident defendant to demonstrate a "compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1985).

Generally, in a diversity action, a federal court may exercise personal jurisdiction over a non-resident defendant if two conditions are met: (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction complies with the due process requirements of the Fourteenth Amendment of the United States

Constitution. *Revell*, 317 F.3d at 469. This Court, however, need only consider whether the exercise of jurisdiction over the non-resident defendant comports with due process "because the Texas Supreme Court has [long] established that the Texas long-arm statute . . . 'reaches as far as the federal constitutional requirements of due process will permit.' " *Irving v. Owens–Corning Fiberglas Corp.*, 864 F.2d 383, 385 (5th Cir. 1989) (quoting *Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 200 (Tex. 1985)); *accord Revell*, 317 F.3d at 469-70.

"The Due Process Clause . . . permits the exercise of personal jurisdiction over a nonresident defendant when (1) [the] defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over [the] defendant does not offend 'traditional notions of fair play and substantial justice.' " *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 214-15 (5th Cir. 2000) (quoting *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999)); *accord Daimler*, 134 S. Ct. at 754; *Monkton*, 768 F.3d at 431. Both portions of this test must be satisfied before the Court can exercise personal jurisdiction over the defendants. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993).

IV. **CONTENTIONS OF THE PARTIES**

    A. **The Defendants' Contentions**

The defendants argue that the Court is obligated to dismiss the plaintiffs' suit because: (a) the Court lacks both general or specific jurisdiction over them; and (b) the plaintiffs have completely failed to allege any facts regarding any specific conduct that the defendants allegedly committed that brings them within the jurisdiction of this Court. The defendants assert that the plaintiffs' jurisdictional allegations are conclusory, that the "fiduciary shield doctrine" precludes general jurisdiction, and that to exercise jurisdiction over them is neither fair nor reasonable. The defendants maintain that they do not own any property, have any offices, employees nor

agents in Texas. The defendants aver that they did not aim any conduct to have an effect within Texas, arguing that they held positions as officers of OEC only during the time that it was headquartered in California. Finally, the defendants allege that traditional notions of fair play and substantial justice would be offended if this Court were to exert personal jurisdiction over them. Accordingly, the defendants contend that the plaintiffs' claims against them should be dismissed because this Court lacks personal jurisdiction over them.

### B. The Plaintiffs' Contentions

The plaintiffs argue that the defendants' illegal activities established sufficient minimum contacts with Texas implicating the exercise of specific jurisdiction over them. The plaintiffs claim that the defendants committed several acts that constitute a tort and such acts were committed in whole or in part in Texas. Some of the tortious acts alleged by the plaintiffs include, but are not limited to, fraud, conspiracy, and breaches of various duties owed to OEC as officers and shareholders. Specifically, the plaintiffs contend that the defendants illegally assigned legal rights conveyed to them via the SPA to Crawford and Stanton, which provided them with the ability to file suit against the plaintiffs in Delaware. The plaintiffs allege that the defendants use of email and postal mail in the furtherance of these illegal activities amount to a violation of federal law and predicate acts under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Thus, the plaintiffs assert that the defendants' actions should encourage this Court to deny the defendants' motions to dismiss for lack of personal jurisdiction.

### V. Discussion & Analysis

The Court is of the opinion that the defendants' motion to dismiss for lack of personal jurisdiction should be granted. Neither in their original pleadings nor in their responses to the motions to dismiss do the plaintiffs provide more than mere allegations that would avail the defendants to Texas. In order for this Court to exercise jurisdiction over the defendants in this

suit, the plaintiffs must establish both that the defendants have minimum contacts with Texas and that the exercise of jurisdiction over them would not constitute unfairness. *See Atlas Copco AB*, 205 F.3d at 215. To date the plaintiffs have made no such showing on this point and for this, they bear the burden. *See Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir.2010).

The plaintiffs concede that general jurisdiction is not at issue here, therefore, the Court need not address it. (Dkt. No.21, at 13). With that in mind the Court examines its basis, if any, for specific jurisdiction. The relevant law in the Fifth Circuit provides that to demonstrate a prima facie case for specific jurisdiction, the plaintiffs must establish that: (1) the non-resident defendant purposefully directed its activities at Texas as the forum state; and (2) the plaintiff's causes of action arise out of or relate to the non-resident defendant's forum-related activities. *See Panda Brandywine Corp. v. Potomac Electric Power Co.*, 253 F.3d 865, 868 (citing *Burger King Corp.,* 471 U.S. at 472, 105 S. Ct. at 2174). "The non-resident's 'purposeful availment' must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state." *Ruston Gas Turbines, Inc. v. Donaldson Co. Inc.*, 9 F.3d 415, 419 (5th Cir. 1993) (quoting *Worldwide Volkswagen*, 444 U.S. at 297, 100 S. Ct. at 567) (other citation omitted). "To conclude that a defendant should 'reasonably anticipate' being haled into the forum [s]tate requires 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws,' or 'purposefully directs' its efforts toward the forum [s]tate residents." *Panda Brandywine*, 253 F.3d 865, 869 (citing *Burger King Corp.*, 471 U.S. at 475 – 76, 105 S. Ct. at 2174).

It is undisputed that the defendants are not residents of the forum. However, the plaintiffs suggest that specific personal jurisdiction arises in this case via the defendants'

concerted acts to usurp authority of OEC. Specifically, the plaintiffs allege that the defendants entered into a secret agreement that assigned unspecified legal rights to Stanton and HNL, LLC, which prompted the filing of a Delaware lawsuit against the plaintiffs. The plaintiffs further allege that the use of email and the U.S. Postal Service in the furtherance of these illegal acts subject the defendants to prosecution under the RICO Act.

Without more, these allegations are insufficient to support the exercise of specific jurisdiction over the defendants. First, the Fifth Circuit has ruled that "mere allegations of tortious interference with a forum resident's contractual rights are not sufficient to establish specific personal jurisdiction." *Central Freight Lines, Inc. v. APA Trasport Corp.*, 322 F.3d 376, 383 (5th Cir. 2003) (citing *Panda Brandywine*, 253 F.3d at 869); *see* also *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 772 (5th Cir. 1988). The Court is of the view that the claims alleged by the plaintiffs are not substantiated by facts and do not rise above the level of "mere allegations." Even if the Court were to determine that the defendants assigned legal rights to another party in efforts to take control of OEC, those facts alone are not sufficient to establish specific jurisdiction over the defendants.

The plaintiffs assert that by conspiring with Stanton the defendants committed fraud in Texas, that assertion fails. It is well-settled in this Circuit that specific personal jurisdiction may be premised on intentionally tortious conduct that is purposefully aimed at the forum state. Those facts are not present here. In fact, "the Supreme Court [has] held that [only] when an alleged tort-feasor's intentional actions are expressly aimed at the forum state, and the tort-feasor knows that the brunt of the injury will be felt by a particular resident in the forum, [must] the tort-feasor . . . reasonably anticipate being haled into court there to answer for its tortious

actions." *Southmark*, 851 F.2d at 772 (citing *Calder v. Jones*, 465 U.S. 783, 789, 104 S. Ct. 1482, 1487 – 88, 79 L.Ed.2d 804 (1984) (emphasis added)).

In this case, the plaintiffs have tendered no evidence establishing that the defendants expressly aimed their allegedly tortious activities at Texas or that it even knew that any injury would be experienced by the plaintiffs in Texas. Although the defendants had a contract with a Texas resident regarding a company headquartered in Texas, it cannot be said that those facts evince tortious conduct aimed at this jurisdiction. Furthermore, the nature of the actions would not lead a defendant to reasonably believe that he was at risk of being haled into this Court.

To the extent that the plaintiffs imply that by entering into an agreement with Stanton, the defendants contracted with a Texas resident, out of which specific jurisdiction arises, that argument also fails. Again, it is well-settled in this Circuit that "merely contracting with a resident of the forum state is insufficient to subject the nonresident defendant to the forum's jurisdiction." *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) (internal citations omitted). Moreover, the Fifth Circuit "has . . . held that the combination of . . . engaging in communications related to the execution and performance of [a] contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant." *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) (internal citation omitted).

In sum, nothing in the record demonstrates that the defendants expressly directed their alleged tortious activities at Texas or that they purposefully availed themselves to this jurisdiction. Thus, because the defendants' contacts are insufficient to give rise to purposeful availment, this Court determines that the plaintiffs have failed to establish a prima facie showing

that the defendants are subject to specific personal jurisdiction in Texas. Furthermore, this Court concludes that the defendants lack sufficient "minimum contacts" and, therefore, need not consider whether the exercise of jurisdiction over it would offend traditional notions of fair play and substantial justice. *See Felch*, 92 F.3d at 329 n.20 (citing *Asahi Metal Ind. v. Superior Court*, 480 U.S. 102, 119 – 21, 107 S. Ct. 1026, 1036, 94 L.Ed.2d 92 (1987) (reasoning that because the plaintiff "failed to establish sufficient 'minimum contacts' with Texas, [it] need not address whether the exercise of personal jurisdiction . . . would offend traditional notions of fair play and substantial justice.")).

## VI. Conclusion

Based on the foregoing discussion, the Court hereby **GRANTS** the defendants' motions to dismiss pursuant to Rule 12(b)(2).

It is so **ORDERED**.

SIGNED on this 14th day of March, 2017.

_____
Kenneth M. Hoyt
United States District Judge